Favre *v.* Medlock.

4-8426                                    208 S. W. 2d 439

Opinion delivered February 16, 1948.

*Guy H. Jones,* for appellant.

*J. W. Johnston* and *Carroll W. Johnston,* for appellee.

Holt, J. On April 14, 1942, at about 1:30 a. m., a truck which appellant, Carl Favre, was driving on concrete highway 64 on the outskirts of the town of Plumerville, struck and killed two work horses belonging to appellee. Appellee, the owner, sued to recover damages. He alleged that appellant was negligent in that he failed to keep a lookout and was driving at an excessive and dangerous rate of speed, while under the influence of liquor.

Appellant's answer was a general denial, and in a cross complaint alleged that he was free from negligence, but that appellee was negligent "in that said stock be-

longing to the plaintiff (appellee) was not kept off the public highways as required by law," and prayed for damages to his truck and for personal injuries.

At the close of all the testimony, the trial court refused to submit to the jury any issue in appellant's cross complaint, having found that no evidence had been adduced in support thereof. The cause went to the jury on the remaining issues and resulted in a verdict for appellee in the amount of $300.

This appeal followed.

For reversal, appellant questions the sufficiency of the evidence to support the verdict, contends that the court erred in giving instructions numbered 16, 17, 18 and 20, and the fact that appellee's horses were running at large, with or without his knowledge, was in violation of the Conway County Stock Law as alleged in his complaint and *prima facie* evidence of appellee's negligence, and that the court erred in refusing to submit this issue to the jury.

The facts tended to show that appellee kept the horses in question confined within an enclosure surrounded by a wire fence, that they had broken out on the night in question, without appellee's knowledge and had strayed upon the highway where they were struck and killed by appellant's truck.

Lum Reed, on behalf of appellee, testified that the horses were killed on the highway almost directly in front of his house. He was awakened by a considerable crash "like two automobiles or something blowing up in front of the house." He immediately went to the scene and appellant was walking around the truck and remarked to Reed "I killed this man's team." Appellant said he lived at Conway. "Q. During the time you observed him (Carl Favre), what can you say as to his condition as to being sober? A. I would say he was intoxicated some. Q. Mr. Reed, I wish that you would give the jury the position of the car and the horses? A. The car was on the north side of the highway headed east, the mare was lying a few feet in front of the truck

in a dying condition when I got out there, broken leg and probably a broken neck. Q. What was the condition of the black horse? A. Well, I judge the black horse was something like a 100 feet east, opposite side of the highway, on the south side of the highway. Q. From the point where these horses were struck, where the car stopped and the gray mare was lying, back west, (appellant was driving east) I will ask you, how far that road is perfectly straight? A. Right close to a quarter of a mile. Q. To the top of the hill? A. Yes. Q. There is nothing to obstruct the view of the defendant and nothing to prevent him from seeing these horses, if he had lights? A. The road is straight and open, not a thing in the world to keep him from seeing them.''

There was other testimony of a corroborative nature.

Act 405 of the 1919 Legislature provides in § 2 that ''it shall be a misdemeanor, punishable by a fine not exceeding fifty dollars ($50) for any person owning horses . . . to allow the same to run at large anywhere in Conway county,'' and in § 5, ''The owner of any stock, which is allowed to run at large in Conway county, . . . shall be liable to triple damages for any damage which may be done by such stock running at large,'' etc.

In *Briscoe* v. *Alfrey,* 61 Ark. 196, 32 S. W. 505, 30 L. R. A. 607, 54 Am. St. Rep. 203, this court had for consideration § 359, Pope's Digest, which prohibits the running at large of stallions or unaltered mules. In construing that statute, it was held that running at large meant the negligent act of the owner in allowing the animal to run at large which would subject him to the civil and penal consequences prescribed by that statute. There it was said: ''What degree of care is required? Only that which a prudent man under similar circumstances would exercise to prevent animals of the kind mentioned from running at large, taking into consideration their natural habits and propensities. It is the intentional or negligent permission of the owner for his animal to run at large, which subjects him to the civil and penal consequences prescribed by the statute. Whether the owner

has exercised such care as the law requires, if the facts are disputed, is a question for the jury.''

This principal was reaffirmed in *Fraser* v. *Hawkins*, 137 Ark. 214, 208 S. W. 296, and in *Field* v. *Viraldo*, 141 Ark. 32, 216 S. W. 8. See, also, 2 Amer. Jur., page 739, § 62, under the subject ''Animals.''

The rule announced in these cases applies with equal force here, and the court did not err in refusing to hold, in effect, that the fact .that appellee's horses were at large, in the circumstances here, was *prima facia* negligence on the part of appellee.

On the facts presented, the instructions complained of by appellant, when considered along with all other instructions given by the court and fully covering the case, were correct declarations of the law. These instructions were as follows:

''16. You are instructed that in Conway county, under the law, persons owning or controlling cattle and stock are required to keep up and not to permit them to run at large knowingly.''

17. If they should find from a preponderance of ''the evidence in this case that the plaintiff knowingly permitted ·the stock alleged to have been killed by defendant's automobile to run at large and in so doing, if such occurred, plaintiff was negligent and that such negligence, if any, was the proximate cause of the stock being killed and that defendant was in the exercise of ordinary care at the time of the alleged accident, in the driving and operation of his automobile, then if you so find, your verdict should be for the defendant.''

18. If they should find from a preponderance of ·''the evidence in this case, that the stock alleged by plaintiff to have been killed by defendant's automobile, without plaintiff's knowledge or permission, got out of an enclosure and upon the highway as alleged, and that defendant was guilty of some act of negligence as alleged, which was the proximate cause of the death of such stock, then if you so find, your verdict should be for the plain-

tiff. Provided, you find that plaintiff was not guilty of negligence contributing to causing the death of such stock.

"20. You are instructed that if you find from the testimony in this case, that, and from a preponderance thereof, the defendant was guilty of some act of negligence at the time and place of the alleged accident, as alleged in the complaint which was the proximate cause of the death of the stock sued for herein, then your verdict should be for the plaintiff. Provided, you find that plaintiff was not guilty of negligence contributing to or causing the damages complained of."

Appellant placed strong reliance on the recent case of *Pool* v. *Clark,* 207 Ark. 635, 182 S. W. 2d 217. However, we think that case distinguishable for there the statute under consideration made it "unlawful for any . . . horses . . . to run at large," whereas here we are dealing with a statute that makes it unlawful for the owner to "allow" the animals to run at large. The former is an absolute inhibition, whereas the present case involved the question of whether the owner exercised due care to restrain his horses.

While appellant denied any acts of negligence on his part, this was a question for the jury and when all the evidence is considered, we are unable to say that there was no substantial evidence to support the verdict returned.

On the whole case, finding no error, the judgment is affirmed.