426 S.W.2d 821 (1968)
244 Ark. 714
Aubrey VANGILDER, Appellant,
v.
Paul FAULK, Appellee.
No. 5-4550.
Supreme Court of Arkansas.
April 22, 1968.
*822 Kirsch, Cathey & Brown, Paragould, for appellant.
Barrett, Wheatley, Smith & Deacon, Jonesboro, for appellee.
FOGLEMAN, Justice.
This appeal is from a judgment based upon a jury verdict denying appellant a recovery from appellee for the death of a Hereford bull owned by appellant. The parties are adjoining landowners whose pastures are separated by a partnership fence. Evidence on behalf of appellant tended to show that his bull suffered injuries on November 14th from an encounter with appellee's Angus bull in appellant's pasture. Appellee was notified of the occurrence by appellant's wife. He caused his employee to remove his bull from appellant's pasture and to return it to appellee's premises where it was in a holding corral for less than half a day. Thereafter, the bull was returned to appellee's pasture. Appellee took no action designed to prevent another trespass by his bull into appellant's pasture, where appellant kept not only his bull but 20 to 25 cows. Appellee did cause an employee to walk and inspect the division fence, which was found to be intact. *823 Appellee stated that he knew that a bull which escaped his enclosure once had a tendency to make other escape attempts; that when strange bulls meet they can be expected to fight, particularly in the presence of the female of the species; and that when bulls fight there is danger that injury will occur.
Appellee's bull escaped into appellant's pasture again on November 17th. Evidence indicates that another fight took place on that occasion. Appellant's bull died on November 25th as a result of injuries which appellant contends were inflicted in the second fight.
The first point relied on for reversal is that there was error in the court's instructions in that the basis of appellee's liability was limited to negligence in permitting his bull to run at large. The point is properly preserved in appellant's objection to the instruction given and by the rejection of his offer of instructions which would have submitted the case to the jury on the alternate bases of (1) strict liability for damage done by a trespassing animal and (2) liability based on appellee's knowledge of the dangerous propensities of his bull.
Appellant first argues that our cases, such as Little Rock & Ft. S. Ry. Co. v. Finley, 37 Ark. 562, and St. Louis, I. M. & S. Ry. Co. v. Newman, 94 Ark. 458, 127 S.W. 735, 28 L.R.A.,N.S., 83, rejecting the rule of strict liability of an owner for the acts of his trespassing animals should have no application here. This argument is based upon the contention that the properties of these parties were located in a stock law district created under the provisions of Act 156 of 1915. The trial court took judicial notice of the existence of this district. We agree that the rule stated in the above cases is confined to situations where the owner permits his animals to run at large on unenclosed lands of another, and that the rule may well be changed by laws requiring an owner to keep his animals within his own enclosure.
We do not agree with appellee's contention that the 1915 stock law has no application to this case by reason of its repeal by Act 368 of 1947. We have already recognized that stock law districts created under Act 156 remain in existence in spite of the specific language of Act 368 which states that it repeals sections relating to the creation of such districts and to the legal effect of adoption of the district by the electorate. In Goggin v. Ratchford, 217 Ark. 180, 229 S.W.2d 130, it was held that annexation of a single township to a stock law district to which Act 368 was applicable could only be made to districts already in existence when this act was passed. This holding recognized, without stating, the rule that where both the prior and subsequent acts legislate upon the same subject and the subsequent act re-enacts substantial portions of the original act but either adds, eliminates or modifies provisions of the original act, the subsequent act shall be treated as amendatory only in spite of language expressly repealing the prior act. Bear Lake & River Waterworks & Irrigation Co. v. Garland, 164 U.S. 1, 17 S.Ct. 7, 41 L.Ed. 327 (1896); Lamb v. Powder River Live Stock Co., 132 F. 434, 67 L.R.A. 558 (8th Cir. 1904).
A very closely parallel application of the rule is found in Petition of Orange County Water District, 138 Cal.App.2d 518, 292 P.2d 927 (1956). There the contention was made that the district created by a 1933 act was superseded by a completely new district of the same name created by a 1953 act. The basis for this contention was the repeal of § 1 of the 1933 Act by the 1953 Act. It was held that this contention was unsound because the re-enacted portion of the repealed act continued in force without interruption even though the new act provided for different boundaries, different directors and different purposes. Here the re-enactment of substantial portions of the 1915 Act neutralized the repeal, and the 1947 Act should be considered as amendatory of the 1915 Act. The stock law remains in effect as amended by the *824 later act. This appears to be the majority rule. Crawford, Statutory Construction, § 322, p. 657. See 77 A.L.R.2d 357. It is consistent with the holding of this court on the effect of the repeal of our first general comparative negligence statute. Chism v. Phelps, 228 Ark. 936, 311 S.W.2d 297, 77 A.L.R.2d 329.
The doctrine of absolute liability was applied in Pool v. Clark, 207 Ark. 635, 182 S.W.2d 217. That case is not authority requiring the application of the doctrine here, however, because the stock law involved there absolutely prohibited the running at large of certain animals. Absolute liability of the owner was there predicated upon the statute's making the running at large of stock unlawful. See Act 103 of 1907, as amended by Act 273 of 1909. The statute applicable here does not contain such an absolute prohibition. It provides that it shall be unlawful for an owner to permit his animals to run at large outside the owner's enclosure. See Act 156 of 1915 and Act 368 of 1947. We have held that the owner is subject to the consequences of such a statute only when he intentionally or negligently permits his animals to run at large. Favre v. Medlock, 212 Ark. 911, 208 S.W.2d 439. Therefore, the doctrine of strict liability cannot be applied for the reason urged.
Appellant's next argument is that the case should have been submitted to the jury only on the questions of proximate cause and measure of damages because appellee was apprised of the occurrence of November 14, 1966. The evidence was sufficient to raise an issue of fact as to appellee's liability for keeping and failing to restrain an animal known by him to be possessed of vicious and dangerous qualities. Holt v. Leslie, 116 Ark. 433, 173 S.W. 191; Field v. Viraldo, 141 Ark. 32, 216 S.W. 8; McIntyre v. Prater, 189 Ark. 596, 74 S.W.2d 639. Appellant offered his requested instruction No. 1 that would have submitted these issues, but the instruction was defective in that it would have permitted a verdict for appellant if appellant's bull died as a result of either fight. There is no evidence upon which scienter could have been held to exist as a matter of law on the occasion of the first fight, in spite of appellee's admissions. Testimony of a veterinarian called as a witness by appellant might be construed to mean that the death might have resulted from the first fight. This instruction would have also found appellee to have had sufficient knowledge of the bull's propensities after the first encounter to invoke strict liability. The testimony here is not sufficiently clear to eliminate a question of fact on this point.
The trial court's refusal to give an instruction which is not accurate, correct and free from criticism is not reversible error. Henry Wrape Company v. Barrentine, 138 Ark. 267, 211 S.W. 366; Bovay v. McGahhey, 143 Ark. 135, 219 S.W. 1026. It would have been error for the court to have given the offered instruction since it would have allowed the jury to find a verdict for appellant without considering the issue of whether the second fight was the proximate cause of the loss of the bull. Miller v. Ballentine, 242 Ark. 34, 411 S.W. 2d 655.
Appellant offered his requested instructions, numbered two and three, relating to this issue. These were not subject to the proximate cause defect to the same extent as was the first request, although they should have made it clear that liability based on scienter required previous knowledge by the owner. There are other reasons, however, why the refusal of these instructions did not constitute reversible error. Instruction No. 2 would have virtually amounted to the direction of a verdict for appellant. He was not entitled to this. As previously pointed out, there was a jury question as to scienter of appellee under all the surrounding circumstances. While appellant's requested Instruction No. 3 was a correct statement of the law, AMI 1602 is applicable in this case and should have been given with appropriate modifications *825 fitting it to a situation where the injury is to an animal rather than a person.[1] The AMI form would have given the jury an objective statement of the law. The instruction requested is somewhat slanted toward appellant's contentions. One of the primary purposes of adoption of Arkansas Model Jury Instructions was to make jury instructions objective, rather than partisan, statements. Introduction, Arkansas Model Jury Instructions, p. X.
The per curiam order of this court (entered April 19, 1965) clearly directs that when an AMI instruction is applicable in a case, it shall be used unless the trial judge finds it does not accurately state the law. In the event an applicable AMI is not used, the judge is required to state his reasons for refusal. It is implicit in this order that parties request instructions in the language of an applicable AMI, modified if necessary. If a judge is required to state reasons for not using an AMI, it is only logical to require a party offering an instruction when he thinks that an AMI does not adequately or accurately state the law to state his reasons into the record. For this reason, there was no reversible error in the refusal of appellant's requested Instruction No. 3.
Appellant's second point for reversal is the giving of the court's Instruction No. 5 over his objection. This instruction told the jury that in determining whether or not appellee was negligent, it was not to consider the inadequacy of the division fence to restrain appellee's bull, because the responsibility for its maintenance and upkeep was borne by each of the parties. Appellant objected to the giving of this instruction on the basis that there was no allegation or proof with respect to maintenance and upkeep of the fence and that the instruction prejudicially singled out the fact that the inadequacy of the fence to restrain appellee's bull should not be considered when there was no question at issue about the adequacy of the fence. We find appellant's position as to the lack of an issue on maintenance and upkeep to be well taken. The only statement in the pleadings remotely related to such an issue is the vague and general statement in appellee's amendment to his answer alleging that appellant was guilty of contributory negligence by failing to use ordinary care to prevent appellee's animals from entering his pasture. No evidence was ever offered by either party to show any deficiency in the maintenance or upkeep of the fence. On the contrary, an employee of appellee checked the fence after each expedition of the bull and found it to be in good order. It was a 39-inch woven wire fence above which there was one strand of wire making the fence 44 inches high. On appellee's side of the fence there was a ditch about 30 feet wide and 6 feet deep. The ditch was not more than 3 feet from the fence at any point and in places was immediately adjacent to the fence. After the second visit of appellee's bull to appellant's pasture, appellee's employee found black hair caught on the fence. Consequently, insofar as the inadequacy of the fence from the standpoint of maintenance and upkeep is concerned, the instruction was abstract, even if it could be said to be academically correct. The court's Instruction No. 4 had told the jury that a violation of the applicable stock law prohibiting an owner from permitting his cattle to run at large was evidence of negligence. When the two instructions are read together, the giving of this instruction is calculated to be misleading and confusing. Under these conditions the giving of such an instruction is prejudicial and reversible error when it cannot be determined that the jury did not base its verdict on the abstract instruction. Ayer & Lord Tie Co. v. Young, 90 Ark. 104, 117 S.W. 1080; District Grand Lodge No. 11 v. Pratt, 96 Ark. 614, 132 S.W. 998; Harkrider v. Cox, 230 Ark. 155, 321 S.W.2d 226.
*826 Since the appellant, in making his objection to the giving of court's Instruction No. 5, stated that there was no question in the case about the adequacy of the fence, we cannot consider the correctness of that instruction in that respect as a ground for reversal. We foresee that there is a possibility on a retrial that the adequacy of the division fence might be a circumstance to be considered by the jury in determining whether appellee was negligent in failing to take some additional step to prevent his bull's second foray into the Vangilder pasture. We see no reason why the joint responsibility of the parties for the maintenance and upkeep of the fence or the fact that it was a partnership fence should prevent this circumstance from being considered with all the other facts and circumstances of the case on the question of negligence.
The judgment is reversed and the cause remanded for a new trial.
NOTES
[1] It is recognized that modifications of these instructions may be necessary. See Arkansas Model Jury Instructions, "How To Use This Book" pp. XXIV, XXV.